## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MATTHEW SCIABACUCCHI, Individually and On Behalf of All Others Similarly Situated, )))) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| MULESOFT, INC., GREG SCHOTT, ANN WINBLAD, GARY LITTLE, RAVI MHATRE, MARK BURTON, STEVE COLLINS, MICHAEL CAPELLAS, MARCUS RYU, YVONNE WASSENAAR, SALESFORCE.COM, INC., and MALBEC ACQUISITION CORP., ) )))))))) | CLASS ACTION |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on March 20, 2018 (the "Proposed Transaction"), pursuant to which MuleSoft, Inc. ("MuleSoft" or the "Company") will be acquired by salesforce.com, inc. ("Parent") and Malbec Acquisition Corp. ("Merger Sub," and together with Parent, "Salesforce").

2.      On March 20, 2018, MuleSoft's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Salesforce.  Pursuant to the terms of the Merger Agreement, Salesforce commenced an exchange offer set to expire on May 1, 2018, and MuleSoft's stockholders will

receive $36.00 in cash and 0.0711 shares of Salesforce common stock per MuleSoft Class A and Class B common share.

3.     On April 2, 2018, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of MuleSoft common stock.

9.      Defendant MuleSoft is a Delaware corporation and maintains its principal executive offices at 77 Geary Street, Suite 400, San Francisco, California 94108.  MuleSoft's common stock is traded on the NYSE under the ticker symbol "MULE."

10.     Defendant Greg Schott ("Schott") is a Chairman of the Board of MuleSoft and also serves Chief Executive Officer ("CEO").

11.     Defendant Ann Winblad ("Winblad") is a director of MuleSoft.

12.     Defendant Gary Little ("Little") is a director of MuleSoft.

13.     Defendant Ravi Mhatre ("Mhatre") is a director of MuleSoft.

14.     Defendant Steve Collins ("Collins") is a director of MuleSoft.

15.     Defendant Michael Capellas ("Ericson") is a director of MuleSoft.

16.     Defendant Marcus Ryu ("Ryu") is a director of MuleSoft

17.     Defendant Yvonne Wassenaar ("Wassenaar") is a director of MuleSoft.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20.     Defendant Merger Sub is a Delaware corporation, wholly-owned subsidiary of the Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of MuleSoft (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of March 16, 2018, there were approximately 92,690,735 shares of MuleSoft Class A common stock and 40,655,580 shares of MuleSoft Class B common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

28.     MuleSoft is a provider of one of the world's leading platforms for building application networks.

29.     According to the Company, its mission is to help organizations change and innovate faster by making it easy to connect the world's applications, data, and devices.

30.     With its API-led approach to connectivity, MuleSoft's industry-leading Anypoint Platform™ is enabling more than 1,200 organizations in approximately sixty countries to build application networks.

31.     On March 20, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with Salesforce.

32.     Pursuant to the terms of the Merger Agreement, Salesforce commenced an exchange offer set to expire on May 1, 2018, and MuleSoft's stockholders will receive $36.00 in cash and 0.0711 shares of Salesforce common stock per MuleSoft Class A and Class B common share.

33.     According to the March 20, 2018 press release announcing the Proposed Transaction:

> Salesforce (NYSE: CRM), the global leader in CRM, and MuleSoft (NYSE: MULE), the provider of one of the world's leading platforms for building application networks, have entered into a definitive agreement under which Salesforce will acquire MuleSoft for an enterprise value of approximately $6.5 billion. . . .
>
> **MuleSoft: One of the World's Leading Application Network Platforms**
>
> MuleSoft provides one of the world's leading platforms for building application networks that connect enterprise apps, data and devices, across any cloud and on-premise. More than 1,200 customers, including Coca-Cola, Barclays, Unilever and Mount Sinai, rely on MuleSoft to change and innovate faster, deliver differentiated

customer experiences, and increase operational efficiency.

**Acquisition   to   Accelerate   Customers'   Digital   Transformations**

Together, Salesforce and MuleSoft will accelerate customers' digital transformations, enabling them to unlock data across legacy systems, cloud apps and devices to make smarter, faster decisions and create highly differentiated, connected customer experiences.

MuleSoft will continue to build toward the company's vision of the application network with Anypoint Platform, and MuleSoft will power the new Salesforce Integration Cloud, which will enable all enterprises to surface any data—regardless of where it resides—to drive deep and intelligent customer experiences throughout a personalized 1:1 journey.

As part of the world's #1 CRM company and fastest growing top 5 enterprise software company, MuleSoft will be able to accelerate its growth and deliver even more innovation to its customers at scale.

**Details   Regarding   the   Proposed   MuleSoft   Acquisition**

The boards of directors of Salesforce and MuleSoft have unanimously approved the transaction.

Under the terms of the transaction, the MuleSoft acquisition consideration will be composed of $36.00 in cash and 0.0711 shares of Salesforce common stock per MuleSoft Class A and Class B common share, which represents a per share price for MuleSoft common shares of $44.89 based on the closing price of Salesforce common stock on March 19, 2018. The per share price represents a 36% premium over MuleSoft's closing share price on March 19, 2018.

Under the terms of the transaction, Salesforce will commence an exchange offer to acquire all of the outstanding shares of MuleSoft. The transaction is expected to close in the second quarter of Salesforce's fiscal year 2019, ending July 31, 2018, subject to the satisfaction of customary closing conditions, including the tender by MuleSoft stockholders of shares representing a majority of the MuleSoft common stock voting power, on a one-vote per share basis, and the expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Stockholders of MuleSoft owning approximately 30% of the outstanding shares have entered into tender and support agreements with Salesforce, pursuant to which they have agreed, among other things, and subject to the terms and conditions of the agreements, to tender their shares of MuleSoft common stock in the exchange offer. Following the successful completion of the exchange offer, MuleSoft shares not tendered in the exchange offer will be converted in a second step merger into the right to receive the same $36.00 in cash and 0.0711 shares of Salesforce common stock, paid in the exchange offer, per MuleSoft share.

Salesforce expects to fund the cash consideration with cash from its balance sheet and approximately $3.0 billion of proceeds from a combination of term loans and/or the issuance of debt securities. The relative mix of each will depend on prevailing market conditions. Salesforce has obtained a commitment from BofA Merrill Lynch for a $3.0 billion bridge loan facility, subject to customary conditions. This transaction is not subject to any financing condition.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

34.     On April 2, 2018, defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

35.     The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

36.     The Solicitation Statement omits material information regarding the Company's financial projections, Salesforce's financial projections, and the analyses performed by the Company's financial advisor, Goldman, Sachs & Co. ("Goldman").

37.     With respect to the Company's financial projections, the Solicitation Statement fails to disclose: (i) the "NOL forecasts" for the Company; (ii) all line items used to calculate unlevered free cash flow, EBITDA, and EBIT; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

38.     The Solicitation Statement fails to disclose the "internal financial analyses and forecasts for Salesforce prepared by its management, in each case as approved for Goldman Sachs' use by MuleSoft."

39.     With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose:  (i) the inputs and assumptions underlying the discount rates ranging from 11.0% to 14.0%; (ii) the range of illustrative terminal values for MuleSoft; (iii) the inputs and assumptions underlying the perpetuity growth rates ranging from 2.0% to 4.0%; (iv) the estimates for MuleSoft's net operating losses for the years 2018 through 2027; (v) the net debt

of MuleSoft; and (vi) the number of fully diluted outstanding shares of MuleSoft common stock.

40.     With respect to Goldman's Illustrative Present Value of Future Share Price Analysis, the Solicitation Statement fails to disclose:  (i) the assumed amount of net debt; (ii) the projected year-end diluted shares of MuleSoft common stock outstanding; and (iii) the inputs and assumptions underlying the discount rate of 13.0%.

41.     With respect to Goldman's Selected Companies Analysis, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Goldman in the analysis.

42.     With respect to Goldman's Premia Analysis, the Solicitation Statement fails to disclose the transactions observed by Goldman in the analysis as well as the premiums paid in such transactions.

43.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

44.     The Solicitation Statement also omits material information regarding potential conflicts of interest of Goldman.

45.     While the Solicitation Statement provides that "Goldman Sachs has provided certain financial advisory and/or underwriting services to MuleSoft and/or its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may

receive, compensation," it fails to disclose the nature of all such services, as well as the amount of compensation received by Goldman for such services.

46.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47.     The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement:  "The Solicitation or Recommendation."

48.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to MuleSoft's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

49.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50.     Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

51.     Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

52.     The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

53.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

54.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

55.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

56.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

57.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

58.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

59.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

60.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

62.     Rule 14d-9(d) states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

63.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

64.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

65.     The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the exchange offer.

66.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Salesforce)

67.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68.     The Individual Defendants and Salesforce acted as controlling persons of MuleSoft within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of MuleSoft and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

69. Each of the Individual Defendants and Salesforce was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

71. Salesforce also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

72. By virtue of the foregoing, the Individual Defendants and Salesforce violated Section 20(a) of the 1934 Act.

73. As set forth above, the Individual Defendants and Salesforce had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934

Act.

74.     As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

75.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  April 9, 2018

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

**RIGRODSKY & LONG, P.A.**

By:  */s/ Brian D. Long*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*